IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM H.,

     **Plaintiff,**

**vs.**                                      **CIVIL ACTION NO. 2:23-CV-00091**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered February 2, 2023 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is the Plaintiff's Brief in Support of Complaint (ECF No. 5) and the Defendant's Brief in Support of Defendant's Decision (ECF No. 8).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for an outright award or remand (ECF No. 5), **GRANT** the Defendant's request to affirm the final decision (ECF No. 8); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed his application for Title II benefits on November 28, 2016 alleging disability beginning May 15, 2016 due to a heart murmur, diabetes, arthritis, a bad right hip, knee, and ankle, and a bleeding ulcer. (Tr. at 387-394, 423, 1022) His claim was denied at the initial and reconsideration levels of review. (Tr. at 95, 103) Thereafter, he filed a written request for hearing (Tr. at 143-157), which was held on November 1, 2018 before the Honorable M. Drew Crislip, Administrative Law Judge ("ALJ") (Tr. at 1105-1135). On January 11, 2019, the ALJ issued an unfavorable decision (Tr. at 104-115), however, on January 2, 2020, the Appeals Council granted the Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further consideration of the medical evidence (Tr. at 122-125).

Another administrative hearing was held on March 10, 2021 before ALJ Crislip (Tr. at 1136-1164), and on March 25, 2021, the ALJ issued another unfavorable decision (Tr. at 1021-1034). The Appeals Council denied the Plaintiff's request for review (Tr. at 1085-1087), however, this Court granted the Commissioner's motion to remand on February 7, 2022 (Tr. at 1091-1093, 1094-1097, 1098). Subsequently, on May 7, 2022, the Appeals Council remanded the Plaintiff's case to ALJ Nathan Brown for further consideration of the medical record (Tr. at 1099-1100, 1101-1102). Another administrative hearing was held before ALJ Brown on August 25, 2022 (Tr. at 1043-1063), and on October 13, 2022, the ALJ entered an unfavorable decision (Tr. at 1018-1042).

Instead of filing written exceptions to the ALJ's decision with the Appeals Council, on February 6, 2023, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings (ECF No.

4) Subsequently, the Plaintiff filed his Brief in Support of Complaint (ECF No. 5), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8), and finally, the Plaintiff filed his Reply Brief reiterating his arguments in support of remand (ECF No. 9). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 59 years old during the relevant period under review, and considered a "person of advanced age" See 20 C.F.R. § 404.1563(e). (Tr. at 1033) He has a high school education and had worked as a landscaper, having owned a lawncare business which included employees performing lawn maintenance activities. (Tr. at 1032, 1033) The Plaintiff sold his lawncare business shortly before his alleged onset date. (Tr. at 513)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id.

§ 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this particular case, the ALJ found the Plaintiff met the insured status requirements through June 30, 2016. (Tr. at 1024, Finding No. 1) Next, the ALJ determined that he also satisfied the first inquiry because he had not engaged in substantial gainful activity from his alleged onset date of May 15, 2016 through his DLI of June 30, 2016. (Id., Finding No. 2) Under the second inquiry, the ALJ found that through his DLI, the Plaintiff suffered from two severe impairments, diabetes mellitus and hypertension. (Tr. at 1025, Finding No. 3) At the third inquiry, the ALJ concluded that through his DLI, the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 1026, Finding No. 4) The ALJ then found that through his DLI, the Plaintiff had the residual functional capacity ("RFC") to perform medium work except he

could climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, kneel frequently, crouch frequently, and crawl frequently. The claimant could work at unprotected heights frequently, around moving mechanical parts frequently, in extreme cold frequently, in extreme heat frequently, and in vibration frequently.

(Tr. at 1027, Finding No. 5)

At step four, the ALJ found that through his DLI, the Plaintiff remained capable of performing his past relevant work as a landscaper. (Tr. at 1032, Finding No. 6) The ALJ provided an alternative finding that based on his age, education, past relevant work and RFC, the Plaintiff was capable of performing other jobs in the national economy through his DLI. (Tr. at 1033-1034) Finally, the ALJ determined the Plaintiff had not been under a disability from May 15, 2016 through June 30, 2016. (Tr. at 1034, Finding No. 7)

**Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff's main argument on appeal is that the ALJ did not comply with legal standards governing consideration of medical opinions and instead substituted his own lay opinion for the RFC determination – the ALJ rejected or devalued every medical opinion of record, including the Plaintiff's treating provider. For those medical opinions that he afforded little weight to, the ALJ nevertheless did not explain why he did not include specific limitations opined by those medical experts. The ALJ's medium RFC assessment is not supported by any medical opinion of record, and is the product of his own lay judgment. The Plaintiff asks this Court to reverse and remand this case for an outright award or for further proceedings.

The Commissioner contends that the ALJ appropriately considered and evaluated the medical opinions and provided explanations for rejecting or devaluing those opinions. Further, the Commissioner points out that the RFC finding is within the ALJ's exclusive jurisdiction, and he

was not obligated to defer to medical opinions or prior administrative medical findings in determining the Plaintiff's RFC. The Commissioner further argues that the record simply did not support a finding that the Plaintiff was limited to light work, and the Plaintiff is essentially asking this Court to re-weigh the evidence to make a light RFC determination. The Commissioner asserts the final decision is supported by substantial evidence and asks this Court to affirm.

In addition to reiterating his arguments that the ALJ evaluated the opinion evidence based on legal error, the Plaintiff emphasizes in his reply brief that the ALJ's RFC assessment is simply his own lay judgment, and not supported by any medical opinion; the light work RFC is consistent with the opinion evidence offered at the hearings.

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**Prior Administrative Findings:**

At both the initial and reconsideration levels of review, Drs. Narendra Parikshak and James B. Smith determined there was insufficient evidence for the time period to assess the Plaintiff's physical RFC. (Tr. at 88-94, 96-102) The ALJ gave these opinions "no weight", noting that while "the bulk of the medical evidence from the period at issue was available at the initial hearing level (e.g., 3F-8F)", "there are sufficient medical records from the relevant period with which to make a decision." (Tr. at 1030)

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the primary argument centers on the ALJ's review of the medical opinion evidence as it relates to the RFC assessment. Accordingly, the undersigned's review of the medical evidence will be discussed in light of the opinions of record.

**Treating Physician Opinion:**

On February 17, 2021, Sue A. Westfall, M.D., completed a "Physical Residual Functional Capacity Questionnaire" on behalf of the Plaintiff. (Tr. at 996-1001) Dr. Westfall indicated that she had been treating the Plaintiff for approximately ten years, with three to four visits per year. (Tr. at 996) She provided the Plaintiff's diagnoses: dyspnea on exertion; diabetes; hypertension; retinopathy; hyperlipidemia; right knee pain; right hip pain; and heel/ankle pain – with good prognosis. (Id.) Dr. Westfall determined that the Plaintiff could sit, stand or walk for about four hours during an eight-hour workday, but he would need to walk more than seven times during that time for about six to ten minutes. (Tr. at 998) She indicated the Plaintiff would need to shift positions from sitting, standing or walking as well. (Id.) She also indicated that the Plaintiff would need to take unscheduled breaks during an eight-hour workday, but did not indicate how often or how long. (Tr. at 999) She opined that the Plaintiff needed to elevate his legs with prolonged sitting for 10% of an eight-hour workday. (Id.) Dr. Westfall noted the Plaintiff did not require a cane or assistive device. (Id.) She determined that the Plaintiff could lift and carry twenty pounds occasionally; twist, stoop, crouch/squat, and climb stairs occasionally, but rarely climb ladders; and had significant limitations to reaching overhead (5%) with his right upper extremity. (Tr. at 999-1000) Dr. Westfall opined that the Plaintiff would be absent from work about four days per month "per pt" (Tr. at 1000). She did not think the Plaintiff could work in sunlight due to his history of melanoma; she determined he could work full time, at "sedentary [exertional level] only – lacks training" (Tr. at 1001).

**The Administrative Hearings:**[2]

---

[2] Because the Plaintiff's appeal focuses solely on the medical opinions concerning his physical impairments and their related limitations, the undersigned omits the testimony and the ALJ's review of the opinion provided by Mary Buban,

David E. Owens, M.D., Medical Expert Testimony:

At the first hearing on November 1, 2018, Dr. Owens noted the Plaintiff's physical impairments, but opined none met or equaled any listing. (Tr. at 1110-1111) He testified that they would limit the Plaintiff to no more than light exertional activity, that is, to lifting and carrying 20 pounds occasionally, 10 pounds frequently and sit for six hours in an eight-hour workday. (Tr. at 1111) He further testified standing would be limited to four hours and that walking would be limited to two hours, but maybe not continuously; he also opined that the Plaintiff could climb ramps and stairs occasionally, and balance, bend, stoop, crouch, and crawl occasionally, although climbing ropes, ladders, and scaffolding would be less than occasional. (Id.) Dr. Owens determined the Plaintiff's impairments limited his use hand and foot controls to frequently, although he would have to avoid unprotected heights, moving mechanical parts, and extreme heat and cold because that would affect his diabetic control. (Id.) He further testified that because of her lung disease, she would need to avoid temperature extremes and concentrated exposure to respiratory allergens, smoke, dust and fumes. (Id.) He did find that the Plaintiff could tolerate humidity, driving, vibrations, loud noise, and fumes occasionally, and that he should limit his exposure to sunlight, or wear protection, due to his history of melanomas. (Tr. at 1112)

Plaintiff's Testimony:

At the first administrative hearing, the Plaintiff testified that he had been treating for diabetes for a long time, and has had his medications adjusted often to get his blood sugars under control, which had been difficult. (Tr. at 1114) As a result of his fluctuating blood sugars, the

---

Psy.D., the psychological medical expert who testified at the first hearing; Dr. Buban opined the Plaintiff had no medically determinable mental health impairments. (See Tr. at 1031, 1113) This was the only medical opinion the ALJ afforded "significant weight" (Tr. at 1031).

Plaintiff described feeling tired; he also endorsed having daily numbness in his feet and fingers. (Tr. at 1115) He said the numbness makes it difficult to grip objects and walking very far. (Tr. at 1115-1116) He estimated that he could not stand more than one hour before needing to sit down. (Tr. at 1116) The Plaintiff said he had injuries to his shoulder, hip, knee and ankle from a tractor accident in 2014 that makes them sore, he had taken ibuprofen for the pain, but that eventually caused his gastrointestinal bleeding, for which he had been hospitalized. (Tr. at 1117, 1133) He said that the more active he is, the more his joints hurt; his knee causes him problems with bending, stooping, crouching, and going up and down stairs. (Tr. at 1118) His shoulder problems makes it difficult to reach overhead, although he can reach outwards. (Tr. at 1119) His doctors did not recommend any further treatment for his joint issues, such as physical therapy, except for pain pills that the Plaintiff refused to take, so he only takes Tylenol. (Tr. at 1119-1120)

During the second administrative hearing on March 10, 2021, the Plaintiff testified that he stopped working because of his shoulder, hip, knee, and ankle injuries from his 2014 tractor accident – it made walking, weed eating, and mowing with a push mower more difficult. (Tr. at 1147-1148) He stated his hip pain interfered with his sleeping prior to June 30, 2016, and that he takes Tylenol for pain. (Tr. at 1150) The Plaintiff testified that he would also drive less because his right foot would go numb. (Tr. at 1152) Because of his physical conditions, the Plaintiff's son had to help with household tasks or with lawncare. (Tr. at 1152-1153)

Gilberto Munoz, M.D., Medical Expert Testimony:

During the second administrative hearing on March 10, 2021, Dr. Munoz opined that during the relevant period, from May 15, 2016 through June 30, 2016, the medical record did not support a finding of any issues with neuropathy or with joint deficiency in the Plaintiff's shoulder,

9

knee, hip, or ankle or that any of his physical impairments met or equaled listing criteria. (Tr. at

1144) However, Dr. Munoz testified that the Plaintiff's impairments would limit him to light work:

he could lift, push, pull, and carry 20 pounds occasionally, 10 pounds frequently, sit, stand and/or

walk for six hours; he could frequently perform posturals, but cannot climb ladders, ropes, or

scaffolds, and cannot work in unprotected heights; he could occasionally work around moving

mechanical parts; he could occasionally be exposed to extreme heat because of his diabetes. (Tr.

at 1145)

At the third administrative hearing, Dr. Munoz again endorsed the light work limitation,

with all posturals at frequent levels, but no climbing ladders, ropes, or scaffolds and no work at

unprotected heights or around heavy machinery. (Tr. at 1051-1052) Dr. Munoz explained his

conclusions were supported by the record indicating that the Plaintiff has chronic hypertension,

suspected coronary artery disease that was later ruled out, but having a near syncope episode. (Tr.

at 1053)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape

their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such

decision." Blalock, 483 F.2d at 775.

**Analysis**

As an initial matter, the Plaintiff must show that he became disabled prior to the expiration

of his insured status on June 30, 2016. The DIB program provides for payment of disability benefits

to individuals who are "insured" by virtue of their contributions to the Social Security trust fund

through Social Security tax on their earnings. 20 C.F.R. § 404.110. To be entitled to DIB in this

case, the Plaintiff bears the burden of showing that he became disabled prior to June 30, 2016, the

date when his insured status expired for the purposes of DIB. See 42 U.S.C. § 423(a)(1)(A); 20

C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the medical requirements for

disability only after his date last insured will not be entitled to DIB benefits. 20 C.F.R. §

404.131(a). See also Jenkins v. Astrue, No. 3:10cv705, 2012 WL 3776370, at *3 n.6 (E.D. Va.

Apr. 25, 2012) (citing Matullo v. Bowen, 926 F.2d 240, 246 (3d Cir. 1990)) (explaining that a

worsened condition or a new impairment arising after the date last insured cannot be a basis for

remand or an award of disability benefits). Therefore, the relevant period for purposes of DIB is

just from May 15, 2016, the date of the Plaintiff's alleged disability onset, to June 30, 2016 when

his insured status expired (Tr. at 1023).

Evaluation of Opinion Evidence:

Because the Plaintiff takes issue with the ALJ's evaluation of his treating source's opinion

evidence, as a practical matter it is best to review how the SSA governs the criteria for evaluating

opinion evidence prior to addressing the ALJ's RFC assessment; per Section 404.1527(a)(1):

> Medical opinions are statements from acceptable medical sources that reflect
> judgments about the nature and severity of your impairment(s), including your
> symptoms, diagnosis and prognosis, what you can still do despite impairment(s),
> and your physical or mental restrictions.

The Regulations provide that an ALJ must analyze and weigh all the evidence of record,

considering the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6). These factors include: (1) Length

of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment

relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors.

With respect to the opinions of treating sources, the Commissioner generally must give more

weight to the opinion of a treating physician because the physician is often most able to provide

"a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §

404.1527(c)(2).[3] Nevertheless, a treating physician's opinion is afforded "controlling weight only

if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques

and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp.

53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(c)(2). The opinion of a treating physician

must be weighed against the record as a whole when determining eligibility for benefits. Id. §

404.1527(c)(2). Additionally, the Regulations state that the Commissioner "will always give good

reasons in our notice of determination or decision for the weight we give your treating source's

opinion." Id.

---

[3] The treating source rule has since been eliminated, effective March 27, 2017, however, because this claim predated this rule change, the pertinent Regulations in effect at the time apply. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5853 (Jan. 18, 2017).

To the extent that Dr. Westfall opined that the Plaintiff was disabled as a result of his impairments resulting in being absent from work four days per month or limited to sedentary work only (Tr. at 1000, 1001), the ALJ was under no duty to give any special significance to that opinion. See 20 C.F.R. §§ 404.1527(d)(1), (d)(3).[4]

In this case, the ALJ recognized that Dr. Westfall offered an RFC by way of a representative prepared form, noting that she indicated she had been treating the Plaintiff for approximately ten years and had seen him for three to four visits per year (Tr. at 1031, 996). The ALJ observed that while Dr. Westfall noted the Plaintiff's diagnoses and symptoms, she did not provide any period of time for which she based her opinions – it was noted in particular that Dr. Westfall's opinion was offered in February 2021, well beyond the DLI in this case (Tr. at 1031, 1001). The ALJ also noted that Dr. Westfall found the Plaintiff was capable of working at the sedentary exertional level, in part, because "he 'lacks training' " – the ALJ found this determination "to be more akin to a vocational assessment rather than based on medical findings."[5] (Id.) The ALJ further explained this "vocational assessment" was "inconsistent with even sedentary work as she opined the claimant could occasionally lift and carry 20 pounds but did not opine the claimant was capable of frequently lifting and carrying any weight." (Tr. at 1031-1032, 1001, 999) The ALJ also noted that Dr. Westfall "failed to explain adequately or otherwise support the specific limitations opined, such as by citing to any records from the period under adjudication." (Tr. at 1032) Significantly, the ALJ observed that the record referencing the

---

[4] The ALJ noted that Dr. Westfall "supported this restriction by citing to 'per pt' ", and that "at least some portion of her opinion was supported only on the claimant's subjective statements." (Tr. at 1032, 1000)

[5] Pursuant to 20 C.F.R. § 404.1527(d)(2), the ALJ correctly identified this portion of Dr. Westfall's opinion as resembling a "vocational assessment" and is therefore not a "medical opinion", as this would be considered an issue "reserved to the Commissioner" not entitled to any special significance regardless of the source of that opinion.

Plaintiff's " 'excellent exercise tolerance' " showed that Dr. Westfall's opinions "are considerably inconsistent with the objective medical evidence" (Tr. at 1032, 579).[6]

Regarding the opinion evidence provided by Dr. Owens, *supra*, the ALJ also gave this opinion "no weight": for starters, the ALJ acknowledged that Dr. Owens opined the Plaintiff "may have mild neuropathy" due to his uncontrolled diabetes mellitus, but failed to cite where in the record he determined the Plaintiff "may" have neuropathy. (Tr. at 1030, 1110) Although Dr. Owens noted the Plaintiff exhibited cardiac symptoms of chest pain and shortness of breath with a corresponding abnormal stress test, the ALJ also noted that imaging of the Plaintiff's coronary arteries was normal, and an echocardiogram revealed a normal ejection fraction. (Tr. at 1030) While Dr. Owens discussed that the Plaintiff "may have some shoulder restriction from adhesive capsulitis", the ALJ noted that Dr. Owens recognized that "this was 'not well documented in the record' " (Tr. at 1030, 1111). The ALJ found Dr. Owens's RFC assessment "was largely inconsistent and unsupported by the record", noting in particular that his opinion that the Plaintiff could "less than occasionally (or never) climb ladders, ropes, and scaffolds and that the remaining postural activities could be performed occasionally . . . he offered no specific support for these limitations." (Tr. at 1030) The ALJ noted that Dr. Owens's restriction that the Plaintiff avoid unprotected heights and moving mechanical parts was offered "without any specific reasoning." (Id.) The ALJ also found that Dr. Owens's opinion that the Plaintiff avoid extremes of heat and cold "because that would affect his diabetic control" to be without explanation or how this opinion was supported by the record. (Tr. at 1030, 1111) The ALJ similarly found Dr. Owens's opinion

---

[6] The ALJ cited a nuclear stress test administered on October 17, 2016 following the Plaintiff's complaints of shortness of breath and fatigue on exertion. (Tr. at 574-580)

that additional environmental limitations, such as exposure to loud noise, without further support or explanation. (Tr. at 1030, 1112)

Next, the ALJ observed that the medical evidence of record pertaining to the period under adjudication "is rather limited", but the available records are inconsistent with "these substantial limitations (e.g., 4F; 5F; 6F)." (Tr. at 1030, 539-562, 563-588, 589-703)[7] The ALJ then noted that the records from that period show that the Plaintiff's "greatest complaint during the period is exertional shortness of breath; however, he was just recovering from a gastrointestinal bleed resulting in anemia (2F; 3F)." (Tr. at 1030-1031, 512-523, 524-538)[8] Contrary to Dr. Owens's opined limitations, the ALJ also found that neither the Plaintiff's diabetes nor hypertension was so grossly uncontrolled that supported such limitations, stating that this is "clearly demonstrated by the claimant's unremarkable performance during multiple physical examinations (6F/4, 13, 23, 26, 35, 39, 40, 43; 9F/7; 20F/22) and even his stress test which revealed he 'exhibited excellent exercise tolerance' (5F/17)."[9] From this evidence, the ALJ determined that less restrictions are more consistent with the record. (Tr. at 1031)

Regarding the testimonial opinions of Dr. Munoz, provided at a prior hearing and the current one, the ALJ afforded them "little weight." (Tr. at 1031, 1032) The ALJ again found that the records from the period under adjudication are inconsistent with the doctor's substantial

---

[7] These records concern treatment records from William Ross, M.D., dated February 9, 2016 through September 9, 2016; Stephen Diblasi, D.O., dated October 10, 2016 to November 21, 2016; and the Cabin Creek Health Center, dated July 23, 2015 through November 29, 2016.

[8] These exhibits concern inpatient hospital records and emergency department records from the Charleston Area Medical Center, and are dated May 4, 2016 to May 5, 2016, and May 8, 2016, respectively.

[9] The ALJ cited treatment notes from the Cabin Creek Health Center from November 11, 2016, August 8, 2016, June 21, 2016, June 6, 2016, May 10, 2016, January 8, 2016, August 11, 2015, November 29, 2016, and October 26, 2018, as well as the "Nuclear Stress Test Report" from Stanton Cardiology Center dated October 17, 2016.

limitations, again noting that the Plaintiff's diabetes and hypertension were not grossly uncontrolled and his unremarkable physical examinations and "excellent" exercise tolerance, as described and cited by the ALJ earlier, *supra*. From the current hearing, the ALJ noted that Dr. Munoz testified that "he relied heavily on the claimant's syncope in formulating" his RFC, but the record showed the syncope resulted from acute anemia secondary to a gastrointestinal bleed that "had essentially resolved by the period at issue." (Tr. at 1032) The ALJ noted, for instance, that while the Plaintiff's symptoms occurred in May 2016, they had "improved/resolved" by the end of the month. (Tr. at 1032, 514, 524-538, 581, 591, 610)[10]

The foregoing demonstrates that the ALJ provided "good reasons" for not giving controlling weight to the Plaintiff's treating source and complied with the regulatory factors under Section 404.1527(c). In light of the Fourth Circuit's holding in <u>Dowling v. Commissioner of Social Security Administration</u>, 986 F.3d 377 (4th Cir. 2021) and <u>Arakas v. Commissioner, Social Security Administration</u>, 983 F.3d 83, 107 (4th Cir. 2020), the undersigned **FINDS** that the ALJ's decision not to give controlling weight to the Plaintiff's treating source's opinion is supported by substantial evidence. Moreover, the undersigned further **FINDS** that substantial evidence supports the "no weight" afforded to Dr. Westfall's opinion because the explanation provided by the ALJ demonstrates that he considered each of the regulatory factors enumerated under Section 402.1527. See, <u>Dowling</u>, 986 F.3d at 385. Further, regarding the opinion evidence provided by the non-examining, non-treating medical sources, the undersigned **FINDS** that that the ALJ's explanation

---

[10] The ALJ cited numerous medical records in support of this finding: a record from Charleston Area Medical Center dated May 4, 2016; the emergency department records from Charleston Area Medical Center dated May 8, 2016; a treatment note from Stanton Cardiology Center dated October 10, 2016 indicating the Plaintiff "leads a very active lifestyle and currently has no symptoms whatsoever. He has no chest discomfort of any type"; a treatment record dated November 29, 2016 from Cabin Creek Health Center indicating the Plaintiff was "doing much, much better" while he still reported mild shortness of breath with exertion; and additional treatment notes from Cabin Creek Health Center dated June 28 and 21, 2016, respectively, reporting the Plaintiff experienced mild shortness of breath on exertion.

for the value he assigned to the opinions complies with the Regulations as well as this Circuit's

jurisprudence, and further **FINDS** that the ALJ provided an adequate explanation why he did not

adopt the greater limitations opined by Drs. Owens and Munoz.

The RFC Assessment:

It is known that the RFC determination is the most a claimant can do despite his restrictions

or limitations, and is *solely* an administrative assessment made by the adjudicator based on all the

relevant evidence in the record – no medical opinion is required to fashion an RFC determination,

but is considered with the overall evidence. See Social Security Ruling (SSR) 96-8p, 1996 WL

3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); Felton-Miller v. Astrue, 459 Fed.

Appx. 226, 230-231 (4th Cir. 2011). Notably, SSR 96-8p also provides that "[t]he RFC assessment

must always consider and address medical source opinions. If the RFC assessment conflicts with

an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

1996 WL 374184, at *7.

Of interest here, is that the ALJ adopted none of the medical experts' opinions providing

for greater restrictions in the Plaintiff's RFC, however, it is clear that the ALJ did "consider and

address" the medical source opinions of record. Although the Plaintiff contends that the ALJ

substituted his own lay opinion for those provided by the medical sources, this argument appears

to hinge mainly on the basis that the ALJ simply did not adopt the opined greater restrictions. As

noted supra, the Fourth Circuit has long recognized that the RFC "is an administrative assessment

made by the Commissioner based on all the relevant evidence in the case record." See Felton-

Miller, 459 Fed.Appx. at 230-231; see also, Thaxton v. Colvin, No. 2:16-cv-00281, 2017 WL

359219, at *18 (S.D.W. Va. Jan. 3, 2017)(Eifert, M.J.), *report and recommendation adopted by*,

2017 WL 359201 (S.D.W. Va. Jan. 24, 2017); <u>Jackson v. Comm'r, Social Sec.</u>, 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014)("an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment."); <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012)("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); <u>Sullivan v. Comm'r of Soc. Sec.</u>, 2014 WL 6685075, at *4 (E.D. Cal. Nov. 25, 2014)("It is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source."); <u>Gilmore v. Kijakazi</u>, 2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 2022)("the ALJ labored under no requirement to fashion an RFC that exactly matched Plaintiff's testimony or the opinion evidence."), *report and recommendation adopted by*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022).

Instead, an ALJ must consider all relevant evidence in the record, including the medical opinions, and craft an RFC that is supported by substantial evidence. 20 C.F.R. § 404.1545(a)(1). In this case, the ALJ did not engage in "playing doctor" by interpreting imaging or other evidence when he rejected the opined RFC limitations: the ALJ relied primarily on the limited medical record from the relevant period and correctly observed that the Plaintiff's primary symptomology as a result of a gastrointestinal bleed – shortness of breath – significantly improved or resolved during the relevant period. Indeed, earlier in the decision, the ALJ determined that neither the gastrointestinal bleed nor its resulting anemia causing these symptoms lasted for a twelve-month period. (Tr. at 1025, citing Tr. at 513, 514, 516, 519, 526, 581, 591, 606, 610, 1109, 751)[11]

---

[11] The ALJ cited the emergency room records from Charleston Area Medical Center from May 4, 2016, a treatment note dated October 10, 2016 from the Stanton Cardiology Center, Cabin Creek Health Center records from June 2016,

Moreover, the ALJ examined other records postdating the Plaintiff's DLI that showed the Plaintiff's physical impairments were not so debilitating as alleged during the period under review. The ALJ considered the objective clinical and diagnostic findings, the Plaintiff's statements, as well as the medical source opinions in arriving at the RFC finding. The ALJ summarized and analyzed the evidence, and reconciled any perceived conflicts; the ALJ discharged his duty under the pertinent legal standards in determining the Plaintiff's RFC finding. In short, the ALJ explained why the medical source opinions were not adopted in compliance with SSR 96-8p, and based his explanation on the relevant evidence of record with specific citations allowing for judicial review.

In sum, this Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is unnecessary. Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the ALJ's RFC assessment is supported by substantial evidence.

The undersigned further **FINDS** that the final decision denying the Plaintiff's application for benefits is supported by the substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's request for an outright award or remand (ECF No. 5), **GRANT** the Defendant's request to affirm (ECF No. 8), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States

---

November 2016 and November 2017, as well as the Plaintiff's attorney's brief opening statement from the November 1, 2018 administrative hearing concerning the Plaintiff's treatment and stability of bleeding ulcer.

District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 17, 2023.



Omar J. Aboulhosn
United States Magistrate Judge